UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IRA VORUS, #715289,

        Plaintiff,

v.

UNKNOWN LEWIS, et al.,

        Defendants.
_____/

Case No. 2:22-cv-128

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment (ECF Nos. 17, 26).

Plaintiff — state prisoner Ira Vorus — filed suit pursuant to 42 U.S.C. § 1983 on June 17, 2022. In his verified complaint, Vorus alleged that while he was confined at the Baraga Correctional Facility (AMF) in Baraga, Michigan, Defendants Nurse Practitioner (NP) Lewis, Health Unit Supervisor (HUS) Monville, Assistant Health Unit Manager (AHUM) Jeffery, and Corizon Health, Inc. ("Corizon") acted with deliberate indifference by failing to protect him from exposure to the COVID-19 virus and by providing him with inadequate medical care when he contracted the COVID-19 virus. (ECF No. 1, PageID.3-6.) He also alleged that NP Lewis retaliated against him for filing a grievance regarding his medical treatment. (*Id.*)

On July 26, 2022, this Court issued an opinion finding that Vorus's complaint failed to state a claim against Defendant Corizon. (ECF No. 8, PageID.38-40.) But the Court found that the complaint did state Eighth Amendment claims against Defendants Lewis, Monville, and Jeffery for failing to protect Vorus from exposure to the COVID-19 virus and providing inadequate medical care. (*Id.*, PageID.41-52.) The Court also found that the complaint stated a First Amendment claim against Defendant Lewis for retaliation. (*Id.*, PageID.40-41.) The Court therefore dismissed Corizon. (ECF No. 7.)

Defendants now move for summary judgment, asserting that Vorus did not properly exhaust his administrative remedies prior to filing suit. (ECF Nos. 17, 26.) Defendants argue that the Michigan Department of Corrections (MDOC) grievance process was available to Vorus, and that Vorus did not properly pursue any grievances through Step III of the grievance process. (ECF No. 18, PageID.81-82; ECF No. 26, PageID.143-144.) In response, Vorus says that he attempted to file grievances and grievance appeals against NP Lewis for failing to provide him with adequate medical care and retaliating against him, and against Monville and Jeffery for failing to follow COVID-19 protocol, but that his grievances were never processed. (ECF No. 23, PageID.118; ECF No. 28, PageID.162-163.)

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment (ECF Nos. 17, 26). Although Vorus alleges that he attempted to file various grievances and grievance appeals, including by mailing Step III grievance appeals to the Director's Office, Vorus's allegations are blatantly

2

contradicted by the record. Vorus's Grievance Summary Report reflects that he did not submit the alleged grievances or appeals, and AMF's administrative records confirm that he never mailed any Step III grievance appeals to the Director's Office.

## II.     Relevant Factual Allegations

Vorus says that in November of 2021, AMF experienced a COVID-19 outbreak. (ECF No. 1, PageID.3.) Immediately upon learning of the outbreak, Vorus began asking prison staff to transfer him to a new facility so that he would not be exposed to the virus. The staff informed Vorus that only medical supervisors could effectuate an emergency transfer. (*Id.*) Vorus thereafter began writing HUS Monville and AHUM Jeffery to request a transfer. Vorus says that medical personnel responded to his request, telling Vorus that medical staff were not transferring prisoners due to the pandemic. (*Id.*)

After medical staff refused his request for a transfer, Vorus contracted COVID-19. (*Id.*) On December 8, 2021, Vorus was seen by NP Lewis. (*Id.*, PageID.4.) During that appointment, NP Lewis informed Vorus that he was having a rare reaction to the virus called "neutropenia," meaning that Vorus experienced a dramatic decrease in his white blood cell count. NP Lewis recommended that AMF transfer Vorus to a new facility. (*Id.*) But Vorus says that he was never transferred, and that he did not receive adequate treatment after he was diagnosed with neutropenia.

On December 15, 2021, Vorus says that he filed a Step I grievance against NP Lewis for providing him with inadequate medical care. (*Id.*) Vorus also says that he submitted a grievance against administrative staff for failing to protect him from

3

exposure to COVID-19.  While his grievance against Lewis was processed, Vorus says that his grievance against the administrative staff was never processed.  (*Id.*)

Vorus claims that NP Lewis approached him in late December of 2021, allegedly stating: "Mr. Vorus, I was contacted about that grievance you filed against [me] concerning your treatment.  I guess you thought that would turn out in your favor, but that wasn't pretty smart."  (*Id.*, PageID.5.)  Vorus responded that he was just trying to ensure he received necessary treatment and pointed out that Lewis herself recommended transferring Vorus to a medical facility.  Lewis replied by stating: "Well I mean, Mr. Vorus, if you're sitting here with enough energy to write grievances on our staff, claiming that we're not providing you with adequate treatment as though you're trying to jam us up or something then . . . I mean of course no one's gonna wanna [sic] go through the hassle of processing all of the necessary paperwork to get you out of here, regardless of the circumstances because, you know why?  You're not the only person in this position that we have to deal with; so all this extra stuff that you're going is only getting you pushed to the back burner."  (*Id.*) When Vorus again pointed out that NP Lewis recommended transferring Vorus for treatment, NP Lewis responded: "Come on Mr. Vorus, how long have you been doing this? You filed complaints on my supervisor, Mr. Vorus.  What did you think was gonna [sic] happen? My hands are even tied now."  Lewis allegedly told Vorus that she did not know how things were going to play out as a result of Vorus's grievance. (*Id.*)

4

After his conversation with NP Lewis, Vorus says that he sent more communications to medical staff regarding his condition and the potential for transfer. In January of 2022, HUS Monville replied, telling Vorus that his condition was not urgent, and recommending that Vorus continue taking vitamins as prescribed. (*Id.*, PageID.6.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

5

the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.     Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

6

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

7

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive (PD) 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The

8

respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

V.   **Analysis**

Defendants argue that they are entitled to summary judgment because Vorus did not properly pursue any grievances through Step III of the MDOC's grievance process. (ECF No. 18, PageID.81-82; ECF No. 24, PageID.129-130.) In response,

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

Vorus points to his verified complaint, in which he alleged that he tried to file some grievances, but that staff refused to process his grievances or appeals. (ECF No. 23, PageID.118; ECF No. 28, PageID.162-163.) More specifically, Vorus alleged that he attempted to file grievances and appeals concerning the following: (1) NP Lewis's failure to provide him with adequate medical care, (2) "administrative and medical personnel's" failure to protect him from exposure to COVID-19, and (3) NP Lewis's retaliation against Vorus. (ECF No. 1, PageID.6-7.) Vorus said that staff processed his Step I grievance against NP Lewis for failing to provide adequate medical care, but that staff refused to process the Step II or III appeals to the grievance. (*Id.*, PageID.6.) Vorus said that the Step II appeal to this grievance added claims of inadequate medical care against Defendants Monville and Jeffery. (*Id.*) Vorus said that staff refused to process the other Step I grievances or appeals. (*Id.*, PageID.6-7.)

As an initial matter, the undersigned notes that Vorus does not claim that he tried to file a Step I grievance against Defendants Monville or Jeffery for failing to provide him with medical care. Instead, Vorus says that he set forth allegations of inadequate medical care against Monville and Jeffery in the appeal to his Step I grievance against NP Lewis for inadequate medical care. (*Id.*, PageID.6.)

MDOC P.D. 03.02.130 provides that: "Complaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance *through all three steps of the grievance process* in compliance with this policy." Accordingly, when grievable issues arise, a prisoner

11

must file a Step I grievance; the prisoner does not exhaust his claims by asserting new allegations of wrongdoing in an appeal to a pre-existing grievance.[3] *See Burton v. Jones*, 321 F.3d 569, 574 ("We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Because prisoners cannot exhaust claims by asserting them for the first time in a Step II appeal, the undersigned finds that even adopting Vorus's version of the facts, Vorus has not created a genuine issue of fact as to the exhaustion of his claim against Defendants Monville and Jeffery for providing inadequate medical care. *See Napier v. Laurel Cnty.*, 636 F.3d 218, 223-224 (6th Cir. 2011) ("The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." (quoting

---

[3] The undersigned notes the distinction between a prisoner adding new claims to a grievance appeal, and a prisoner including clarifying information in a grievance appeal. *Compare Moore v. Cheatham*, No. 2:11-CV-345, 2013 WL 690427, at *4 (W.D. Mich. Jan. 24, 2013) (finding that the plaintiff did not exhaust his claim against one of the defendants by setting forth new allegations against the defendant in a grievance appeal), *R&R adopted*, No. 2:11-CV-345, 2013 WL 689100 (W.D. Mich. Feb. 25, 2013), *with Mattox*, 851 F.3d at 597 (finding that there was a genuine issue of material fact with respect to exhaustion where the plaintiff asserted that an unnamed medical provider denied him medication in his Step I grievance, and then included the name of the provider in his Step II appeal).

12

*Braswell v. Corr. Corp. of Am.*, No. 08–0691, 2009 WL 2447614, at *7 (M.D.Tenn. Aug. 10, 2009))). But even if prisoners could exhaust new claims in appeals to pre-existing grievances, the undersigned would recommend dismissal because, in the opinion of the undersigned, Vorus's version of the facts related to exhaustion are blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.").

In his verified complaint, Vorus asserts that he filed a Step I grievance against NP Lewis for providing inadequate medical care on December 15, 2021. (ECF No. 1, PageID.4, 6.) After that grievance was denied, Vorus says that he submitted a handwritten Step II appeal to the Grievance Coordinator. (*Id.*, PageID.6.) When he did not receive a response, Vorus says that he "mailed a handwritten Step III appeal to the Director's Office in Lansing, Michigan." (*Id.*)

Also in his verified complaint, Vorus says that he submitted a Step I grievance against "administrative and medical personnel" for failing to protect him from exposure to the COVID-19 virus. (*Id.*) When he did not receive a response, Vorus says that he submitted a handwritten Step II appeal. When he did not receive a response to the Step II appeal, Vorus says that he mailed a handwritten Step III appeal to the Director's Office. (*Id.*)

Finally, Vorus says that he submitted a Step I grievance against NP Lewis for retaliation in late December of 2021. (*Id.*, PageID.7.) When Vorus did not receive a

13

response to the Step I grievance, he says that he submitted a handwritten Step II appeal. When he did not receive a response to the Step II appeal, Vorus says that he mailed a handwritten Step III appeal to the Director's Office. (*Id.*)

In response to these allegations, Defendants first provided Vorus's Grievance Summary Report. That Report is shown below.

## Prisoner Grievance Summary Report

| Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec | III Recd | III Dec |
|---|---|---|---|---|---|---|---|---|---|---|
| 20181855 | 715289 | VORUS | AMF | 02Z | 7/26/2018 | R | | N | | |
| 20182313 | 715289 | VORUS | AMF | 28I | 9/19/2018 | x | | N | | |
| 20182330 | 715289 | VORUS | AMF | 12D3 | 9/26/2018 | d | | N | | |
| 20191368 | 715289 | VORUS | AMF | 09CT | 6/26/2019 | d | | N | | |
| 20191847 | 715289 | VORUS | AMF | 12D1 | 9/9/2019 | r | | N | | |
| 20192413 | 715289 | VORUS | AMF | 09DT | 12/3/2019 | d | | N | | |
| 20200531 | 715289 | VORUS | AMF | 27Z | 3/23/2020 | x | | N | | |
| 20200543 | 715289 | VORUS | AMF | 28I | 3/24/2020 | x | | N | | |
| 20200591 | 715289 | VORUS | AMF | 27Z | 3/31/2020 | x | 4/20/2020 | x | | |
| 20200670 | 715289 | VORUS | AMF | 11G | 4/15/2020 | d | | N | | |
| 20201481 | 715289 | VORUS | AMF | 27A | 8/31/2020 | x | | N | | |
| 20201573 | 715289 | VORUS | AMF | 17I | 9/22/2020 | d | | N | | |
| 20201713 | 715289 | VORUS | AMF | 27Z | 10/12/2020 | x | | N | | |
| 20201777 | 715289 | VORUS | AMF | 02B | 10/23/2020 | d | 11/23/2020 | d | | |
| 20210383 | 715289 | VORUS | AMF | 17I | 3/12/2021 | d | | N | | |
| 20210385 | 715289 | VORUS | AMF | 12D1 | 3/12/2021 | d | | N | | |
| 20211126 | 715289 | VORUS | AMF | 12C1 | 7/27/2021 | r | | N | | |
| 20211176 | 715289 | VORUS | AMF | 01G | 8/3/2021 | d | | N | | |
| 20211313 | 715289 | VORUS | AMF | 26I | 8/27/2021 | d | 10/4/2021 | | | |
| 20211891 | 715289 | VORUS | AMF | 12D3 | 12/17/2021 | d | | N | | |
| 20220095 | 715289 | VORUS | AMF | 15Z | 1/19/2022 | r | | N | | |
| 20220598 | 715289 | VORUS | AMF | 27A | 4/7/2022 | x | | N | | |
| 20220810 | 715289 | VORUS | AMF | 01G | 5/31/2022 | d | | N | | |
| 20221166 | 715289 | VORUS | AMF | 15A | 8/3/2022 | r | | N | | |

(ECF No. 18-4, PageID.100.)

The Report reflects that Vorus filed and the Grievance Coordinator processed five Step I grievances after the November 2021 COVID-19 outbreak (shown in the last five lines of the report above), but that Vorus did not appeal any of those grievances to Step II. The undersigned acknowledges that this record, if viewed in isolation, might be insufficient to overcome Vorus's verified allegations that he submitted grievances but that the Grievance Coordinator refused to process them. But Defendants also provided an affidavit from the Administrative Assistant at AMF, Ronda McGuire. (ECF No. 18-5.)

McGuire attested that in order for an AMF prisoner to send mail, the prisoner must submit a disbursement authorization form. (*Id.*, PageID.109.) McGuire then stated that between December 1, 2021 and June 15, 2021, Vorus submitted only one disbursement authorization form. (*Id.*) That form was for Vorus's verified complaint, which he sent to this Court. (*Id.*, PageID.110-111.) Significantly, Vorus does not contend that he was obstructed from mailing out his Step III appeals. Rather, Vorus contends that he mailed the appeals, but MDOC staff again failed to process them. Were this true, AMF records would include at least three disbursement requests in December of 2021 for Vorus's alleged Step III appeals. They do not. In the opinion of the undersigned, these records together establish that Vorus's allegations regarding exhaustion are no more than a "visible fiction" insufficient to create a genuine issue of material fact. *Scott*, 550 U.S. at 380.

Because Vorus's allegations regarding his attempts to exhaust and MDOC staff's refusal to process his grievances are blatantly contradicted by the record, the

undersigned finds that there are no genuine issues of material fact and that Vorus failed to exhaust his administrative remedies with respect to any of his claims. The undersigned therefore recommends that the Court grant Defendants' motions for summary judgment.

## VI.     Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motions for summary judgment (ECF Nos. 17, 26). Although Vorus alleges that he attempted to file various grievances and grievance appeals, including by mailing Step III grievance appeals to the Director's Office, Vorus's allegations are blatantly contradicted by the record. Vorus's Grievance Summary Report reflects that he did not submit the alleged grievances or appeals and his administrative records confirm that he never mailed any Step III grievances to the Director's Office.

If the Court accepts this recommendation, this case will be dismissed.


Dated:  March 21, 2023                               /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).